Filed 2/14/23; Modified and Certified for Publication 3/15/23 (order attached)

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KIMBERLY KIRCHMEYER, as Director, etc., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> HELIOS PSYCHIATRY INC. et al., <br><br>     Defendants and Appellants; <br><br> REJI VARGHESE, as Deputy Director, etc., <br><br>     Real Party in Interest and Respondent. | A165128 <br><br> (San Francisco City & County Super. Ct. No. CPF-22-517709) |

While investigating the propriety of psychiatrist Jennifer Dore's prescription of controlled substances to a family member, the Medical Board of California (Board) — an administrative agency within the Department of Consumer Affairs — served a subpoena and interrogatories on Dr. Dore and her practice, Helios Psychiatry, Inc. (Helios; collectively, Dr. Dore) pursuant to Government Code, section 11180, et seq. (Statutory references are to this code.) After Dr. Dore refused to provide the requested documents and information, the Board petitioned for an order compelling their production. The trial court granted the petition, impliedly concluding the Board

1

established good cause for the disclosure of the private medical information. We affirm.

## BACKGROUND

Dr. Dore is a Board-certified psychiatrist and surgeon, and the founder of Helios. A patient filed a complaint with the Board alleging she inappropriately prescribed controlled substances and violated professional boundaries. The Board opened an investigation and discovered suspected irregularities in the manner in which Dr. Dore prescribed controlled substances. For example, between January 2019 and September 2020, Dr. Dore prescribed two controlled substances — Adderall and Klonopin — to another patient, a family member employed by Helios (family member).[1] The Board deemed it necessary to obtain the family member's medical records to evaluate whether the prescriptions were "medically appropriate and within the standard of care."

The Board interviewed Dr. Dore, but she declined to answer questions about the prescriptions. Thereafter, the Board served her with an investigative subpoena seeking medical records supporting the prescription of the two controlled substances to the family member between January 2019 and September 2020. It also served her with investigative interrogatories requesting information about the treatment she provided to the family member and a description of the family member's employment at Helios. Dr. Dore refused to produce the records and objected to the interrogatories. Her family member objected to the subpoena on privacy grounds.

---

[1] Other aspects of the Board's investigation — including its investigation into an allegation that Dr. Dore violated federal regulations by obtaining ketamine prescriptions in her name and using the prescriptions for "office stock" to dispense to patients — are not at issue.

2

Thereafter, the Board petitioned for an order compelling Dr. Dore to comply with the investigative subpoena and interrogatories. It asserted there was a compelling need for the information, and it argued the information was relevant and material to the investigation into whether she complied with the standard of care when prescribing controlled substances to her family member. In a supporting declaration, investigator Michelle Metcalf stated a search of the Controlled Substance Utilization Review and Evaluation System (CURES) database — a repository of prescriptions written for specified controlled substances — revealed Dr. Dore prescribed controlled substances to the family member. Metcalf's supplemental declaration attached two CURES reports. The first report indicated Dr. Dore prescribed Adderall to the family member six times over an 11-month period, and she prescribed Klonopin twice over a six-month period. The second report showed she prescribed the family member Klonopin and ketamine in 2015 and 2016. The Board retained Board-certified psychiatrist Laura Davies as an expert; she reviewed the CURES reports and opined it was necessary to obtain the family member's medical records to evaluate whether Dr. Dore complied with the standard of care.

In a supporting declaration, Dr. Davies listed her educational history and medical training. She also described the nature of the two controlled substances, their potential complications, and the precautions that should be followed when prescribing them. Further, she attested to her familiarity with the standard of care for the practice of psychiatry, and with the rules, regulations, and standard of care for prescribing controlled substances. She noted an ethics opinion issued by the American Medical Association counseled physicians against treating family members except in emergencies. This admonishment, she explained, applied "with particular emphasis" to

3

psychiatrists as they are required to maintain appropriate boundaries with patients and should not serve in multiple roles.  According to Dr. Davies, it is "well understood among psychiatrists, and is part of the training in psychiatry, that treating family members is outside the standard of care.  And prescribing controlled substances is in virtually all circumstances, far outside the standard of care."

Dr. Davies opined it was unlikely that an emergency — such as the unavailability of another qualified physician or a health-threatening situation — justified the prescriptions to Dr. Dore's family member because medical care is widely available in the Bay Area and the family member had no prior prescriptions for the two controlled substances.  Moreover, even if an emergency justified the prescriptions, thorough supporting documentation in the medical record would be required.  Dr. Davies stated it was important for the Board to obtain the family member's medical records and Dr. Dore's interrogatory responses to evaluate her basis for prescribing the controlled substances to the family member, and to determine whether she properly documented the family member's treatment in the medical record.

Dr. Dore opposed the petition to compel compliance with the investigative subpoena and interrogatories.  As relevant here, she argued the Board failed to demonstrate either a compelling need for her family member's constitutionally protected information or good cause for the disclosure.  Marvin Firestone, a psychiatrist and licensed California attorney, offered a lengthy declaration disagreeing with Dr. Davies's assertion that prescribing controlled substances to family members presumptively violates the standard of care.  He also challenged the notion that psychiatrists are taught treating family members is outside the standard of care.  Referencing several Board publications, Dr. Firestone acknowledged the Board " 'discouraged' " the

4

practice, but he insisted there was " 'no law' " prohibiting it. He posited "most physicians treat and prescribe medications to family members," and noted psychiatrists may decide to treat a family member after considering "myriad" factors, including the family member's best interest. In Dr. Firestone's view, the Board failed to demonstrate Dr. Dore's conduct fell outside the standard of care.

In her declaration, Dr. Dore acknowledged physicians are discouraged from treating family members, but she stated the practice is commonplace. She exercised "clinical judgment" when deciding to provide psychiatric services to her family member, and she documented the rationale for her decision in the family member's medical record, where she also provided a "thorough history, follow-up, and coordination of care." The family member provided a declaration explaining his reason for seeking treatment from Dr. Dore, identifying the medications she prescribed, and describing the treatment she provided. The family member represented receiving Adderall and Klonopin prescriptions from "prior physicians."

The trial court granted the petition to compel compliance with the investigative subpoena and interrogatories, impliedly concluding the Board established good cause to justify the production of the family member's private medical information. The court found the Board had a compelling interest in investigating Dr. Dore's allegedly improper conduct in prescribing controlled substances to the family member, and that the information was relevant and material as it would show whether her conduct was justified. It took judicial notice of Board publications providing guidance on treating family members, and it concluded the expert declarations created a factual dispute as to whether — absent exceptional circumstances — it was improper for Dr. Dore to prescribe controlled substances to a member of her family.

5

The court, however, declined to resolve the dispute. As it explained, the Board would determine whether Dr. Dore's conduct fell outside the standard of care during an administrative proceeding, and she could challenge that finding by way of a mandate petition.[2] The court ordered Dr. Dore to produce the family member's medical records and answer the interrogatories.

## DISCUSSION

Dr. Dore contends the trial court erred in granting the Board's petition to compel compliance with its investigative subpoena and interrogatories (collectively, investigative subpoena or subpoena).

Before addressing the argument, we provide an overview of the statutory scheme. The Board has a duty to "protect the public against incompetent, impaired, or negligent physicians." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 7.) "It is authorized to investigate complaints that a physician may be guilty of 'unprofessional conduct,'" which includes "prescribing prescription drugs 'without an appropriate prior examination and a medical indication.'" (*Grafilo v. Wolfsohn* (2019) 33 Cal.App.5th 1024, 1032 (*Wolfsohn*); *Medical Bd. of California v. Chiarottino* (2014) 225 Cal.App.4th 623, 630 (*Chiarottino*).) To accomplish this mandate, the Board may issue an investigative subpoena "even when no formal charges have been filed against a physician." (*Grafilo v. Soorani* (2019) 41 Cal.App.5th 497, 507–508 (*Soorani*); § 11181, subd. (e).)

An investigative subpoena — which must be issued in a manner consistent with the state and federal Constitutions — is valid if it inquires

___

[2] The trial court noted Dr. Dore appeared "to have engaged in unprofessional conduct" in using "ketamine prescribed to her" for patient use, and that while the conduct was not "directly relevant" to the petition, it strengthened the Board's justification for a "wider investigation of her practices in prescribing controlled substances."

"into matters the agency is authorized to investigate," is " 'not too indefinite,' " and "the information sought is 'reasonably relevant' to the investigation." (*State Water Resources Control Bd. v. Baldwin & Sons, Inc.* (2020) 45 Cal.App.5th 40, 55; *Soorani, supra*, 41 Cal.App.5th at p. 508.) The Board may petition the trial court for an order compelling compliance with the subpoena; if the court is satisfied " 'the subpoena was regularly issued,' the court shall order that the person appear and produce the required documents at a certain time." (*Wolfsohn, supra*, 33 Cal.App.5th at p. 1033; §§ 11187, subd. (a), 11188.) Records obtained pursuant to the subpoena must be kept confidential during the Board's investigation. (*Kennedy v. Superior Court* (2019) 36 Cal.App.5th 306, 310.)

When the Board seeks a patient's medical records, " 'California's constitutional right to privacy places procedural and substantive limits on the [Board's] subpoena power.' " (*Soorani, supra*, 41 Cal.App.5th at p. 508, brackets in original.) While robust, this privacy right is not absolute; at times, it must "yield to other important interests." (*Id.* at p. 507.) Courts evaluate potential privacy invasions "by balancing the privacy interest at stake and the seriousness of the threatened invasion with the strength of legitimate and important countervailing interests." (*Wolfsohn, supra*, 33 Cal.App.5th at p. 1034.) Additionally, courts consider whether protective measures and alternatives may minimize the privacy intrusion. (*Ibid.*)[3]

---

[3] Our state Constitution guarantees patients a right to privacy in their medical information. (*Chiarottino, supra*, 225 Cal.App.4th at p. 631.) This privacy right encompasses psychiatric records, which are "entitled to more robust protection than other types of medical records." (*Soorani, supra*, 41 Cal.App.5th at p. 507.) Physicians typically have standing to assert their patients' privacy interests. (*Wood v. Superior Court* (1985) 166 Cal.App.3d

Applying this framework, courts have permitted the Board to review a patient's medical records pursuant to an investigative subpoena upon a showing of good cause. (*Wolfsohn*, *supra*, 33 Cal.App.5th at p. 1035; *Lewis v. Superior Court* (2017) 3 Cal.5th 561, 575.) To satisfy this burden, the Board must demonstrate — through competent evidence — the subpoena is supported by a compelling interest and the information sought is relevant and material to the investigation. (*Soorani*, *supra*, 41 Cal.App.5th at p. 508; *Wolfsohn*, at p. 1035.) We review a trial court's good cause determination for substantial evidence. (*Fett v. Medical Bd. of California* (2016) 245 Cal.App.4th 211, 216.) We apply a de novo review to the question of whether the subpoena meets the constitutional standards for enforcement. (*Wolfsohn*, at p. 1035.)

At the outset, we note the Board was undoubtedly authorized to issue the investigative subpoena to fulfill its mandate to protect public health and safety, and to investigate whether Dr. Dore violated the standard of care by prescribing controlled substances to a family member. (*Arnett v. Dal Cielo*, *supra*, 14 Cal.4th at pp. 7–8; *Chiarottino*, *supra*, 225 Cal.App.4th at pp. 629–630.) Additionally, it is undisputed the trial court balanced the competing privacy and state interests and considered whether protective measures or alternatives could minimize the privacy intrusion. (See *Fett v. Medical Bd. of California*, *supra*, 245 Cal.App.4th at pp. 224–225.) Thus, the sole issue before us is whether substantial evidence supports the court's implied finding

---

1138, 1145, overruled on another point as stated in *Williams v. Superior Court* (2017) 3 Cal.5th 531, 557–558 & fn. 8.) Patients undoubtedly have a strong privacy interest in their psychiatric records, but California has an important countervailing interest both in ensuring " 'medical care provided by Board certified doctors conforms to the standard of care' [citation] and in regulating the distribution of controlled substances." (*Soorani*, at pp. 507–508; *Chiarottino*, at p. 636.)

that the Board demonstrated good cause to justify the disclosure of the medical records.  After carefully reviewing the record, our answer is yes.

In support of its petition to compel compliance with the investigative subpoena, the Board offered evidence it received a complaint that Dr. Dore had — among other things — improperly prescribed controlled substances to a patient.  It opened an investigation and discovered she had prescribed controlled substances to another patient, a family member and employee.  Dr. Davies's declaration described the controlled substances, including potential dangers they could pose, and attested to her familiarity with the standard of care for the practice of psychiatry and the prescription of controlled substances.  Relying in part on an ethics opinion from the American Medical Association discouraging physicians from treating family members, Dr. Davies opined "*treating family members is outside the standard of care.  And prescribing controlled substances is in virtually all circumstances, far outside the standard of care.*"  (Italics added.)

Dr. Davies also noted psychiatrists are required to maintain appropriate boundaries with patients, and they should not serve in multiple roles, e.g., as doctor, employer, and family member.  Additionally, she suggested it was highly improbable an emergency justified the prescriptions, and she explained her reasons for reaching this conclusion.  Thus, ample evidence supports the trial court's conclusion that the Board has a compelling interest in reviewing the family member's medical records to ensure Dr. Dore's conduct conformed to the standard of care, and to regulate the distribution of controlled substances.  (*Soorani*, *supra*, 41 Cal.App.5th at p. 508; *Cross v. Superior Court* (2017) 11 Cal.App.5th 305, 317; *Chiarottino*, *supra*, 225 Cal.App.4th at p. 636.)

Substantial evidence also supports the trial court's conclusion that the medical records are relevant and material to the Board's investigation. (*Cross v. Superior Court*, *supra*, 11 Cal.App.5th at p. 317.) The "relevance standard is construed broadly" for investigative subpoenas (*State Water Resources Control Bd. v. Baldwin & Sons, Inc.*, *supra*, 45 Cal.App.5th at p. 57), but such subpoenas must "be carefully crafted to winnow out immaterial records." (*Cross*, at p. 329.) The Board easily satisfied this standard by offering evidence it tried to obtain the information through less intrusive means, and evidence — from Dr. Davies — that it needed to review the medical records to determine whether Dr. Dore violated the standard of care. (*Soorani*, *supra*, 41 Cal.App.5th at pp. 509–510, 512 & fn. 5; *Cross*, at pp. 329–330.) Additionally, the subpoena was limited in scope — it sought documents and information supporting Dr. Dore's rationale for prescribing the controlled substances to her family member between January 2019 and September 2020. (*Cross*, at pp. 329–330.)

Dr. Dore acknowledges that to establish good cause for disclosure of the medical records, the Board need not prove she breached the standard of care. We agree. When petitioning to compel compliance with an investigative subpoena, the Board's burden is not to prove wrongdoing, but rather to provide evidence supporting an inference the physician departed from the standard of care. (See *Soorani*, *supra*, 41 Cal.App.5th at p. 512.) As one court has explained, good cause requires "sufficient factual justification" to permit the trial court to "gauge *the likelihood* that the records sought will reveal physician misconduct." (*Wood v. Superior Court*, *supra*, 166 Cal.App.3d at p. 1150, italics added.) Dr. Davies's declaration satisfies this standard — it sets "forth detailed facts showing good cause to believe

10

that [Dr. Dore] . . . acted in a way that departs from the standard of care." (*Fett v. Medical Bd. of California, supra*, 245 Cal.App.4th at p. 221.) But a proceeding to compel compliance with an investigative subpoena is not, as Dr. Dore seems to suggest, akin to a motion for summary judgment. For this reason, we perceive no error in the trial court's refusal to make a factual determination regarding the appropriate standard of care. (See *Soorani*, at p. 512.) If the Board completes its investigation and determines Dr. Dore violated the standard of care, it will initiate a disciplinary proceeding under the Medical Practice Act (Bus. & Prof. Code, §§ 2000, 2004), where it will bear the burden to prove she acted outside the standard of care. (See *Davis v. Physician Assistant Bd.* (2021) 66 Cal.App.5th 227, 231–233.)

Next, she maintains the Board's evidentiary showing is insufficient because Dr. Davies did not offer an "opinion concerning how often other practitioners would have issued the prescriptions." We are not persuaded for two reasons. First, Dr. Davies opined that prescribing controlled substances to family members is outside the standard of care except in emergencies, and that it was unlikely an emergency justified the prescriptions to Dr. Dore's family member. From this testimony, the trial court could infer a reasonably prudent psychiatrist in a nonemergency situation would not have prescribed the controlled substances. Second, statistical information regarding the frequency with which psychiatrists prescribe controlled substances to family members is not required to establish good cause in every case. (*Wolfsohn, supra*, 33 Cal.App.5th at p. 1036; *Soorani, supra*, 41 Cal.App.5th at p. 511.) She also contends Dr. Firestone's declaration is more persuasive than Dr. Davies's, but this strategy misapplies the standard of review. In reviewing

11

a trial court's finding for substantial evidence, we do not reweigh the evidence or resolve evidentiary conflicts. (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

Finally, in her opening brief, Dr. Dore relies on *Wolfsohn*, *supra*, 33 Cal.App.5th 1024. There, the Board received a report from a law enforcement officer that a physician specializing in pain management may have overprescribed controlled substances to his patients. (*Id.* at pp. 1027–1028.) It subpoenaed the medical records of five of his patients, then petitioned to compel compliance with the subpoena. The Board offered a supporting declaration from a medical consultant who, as relevant here, opined the physician prescribed the controlled substances " 'in a manner that *appeared to be inconsistent* with the standard of care for prescribing those drugs.' " (*Id.* at pp. 1028–1030, italics added.) The consultant explained it was necessary to review the medical records to confirm the physician examined the patients before prescribing the controlled substances, and to determine whether the physician periodically evaluated and documented the efficacy and effects of the medication regimen. (*Id.* at p. 1030.) In opposition, a doctor specializing in pain management criticized the medical consultant's "understanding of the standard of care for physicians specializing in pain management" and opined — among other things — the prescriptions were " 'not outside of acceptable prescribing by a seasoned Board certified pain management specialist.' " (*Id.* at p. 1031.) The desire to review the patients' medical records, the doctor reasoned, was " 'speculative curiosity, not a good cause belief to pry into confidential patient files.' " (*Ibid.*)

*Wolfsohn* held the Board failed to establish good cause for the investigative subpoena because the medical consultant did *not* opine the prescriptions breached the standard of care, the Board did not contradict the

12

opposing party's expert declaration that the physician's conduct conformed to the standard of care, and the Board did not offer evidence as to the number of patients the physician treated, or how often similarly situated pain management specialists might prescribe the controlled substances. (*Wolfsohn*, *supra*, 33 Cal.App.5th at pp. 1027, 1030, 1037.) For these reasons, *Wolfsohn* held the Board failed to make a sufficient evidentiary showing the physician issued "prescriptions in violation of law or the particular applicable standard of care." (*Id.* at p. 1036.)

*Wolfsohn* is distinguishable for several reasons. First, Dr. Dore came to the Board's attention due to a complaint from a patient, not from an uninvolved third party. (*Wolfsohn*, *supra*, 33 Cal.App.5th at p. 1036 [evidence "that a physician's patient has been harmed . . . would also weigh heavily in the state's favor in seeking patient medical files"].) Second, the Board offered evidence Dr. Dore's conduct was outside the standard of care, as well as evidence supporting an inference similarly situated psychiatrists would be unlikely to prescribe controlled substances to a family member. Third, Dr. Davies's declaration contradicted Dr. Firestone's. Additionally, the absence of information regarding the number of patients Dr. Dore treated is not fatal, as the issue here is not whether Dr. Dore prescribed excessive doses of controlled substances, but whether it was improper for her to prescribe the medication in the first place. Finally, the subpoena is not a fishing expedition, as in *Wolfsohn*, because the Board made an evidentiary showing that the only way to determine whether Dr. Dore was practicing outside the standard of care was to obtain the family member's medical records. (See *Soorani*, *supra*, 41 Cal.App.5th at p. 512, fn. 5.)

In sum, we conclude substantial evidence supports the trial court's implied finding that the Board established good cause to order the disclosure

of the medical records. We have considered the parties' and amici curiae's remaining assertions; none merit discussion. At oral argument, Dr. Dore urged us to reverse based on the psychotherapist-patient privilege. We decline to address the argument — which was rejected in *Cross v. Superior Court, supra*, 11 Cal.App.5th 305 — as it was neither raised in the trial court nor discussed in Dr. Dore's briefing on appeal.

## DISPOSITION

The order granting the Board's petition to compel compliance with the investigative subpoena is affirmed. The Board is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

14

_____

Rodríguez, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Fujisaki, J.


A16512

**CERTIFIED FOR PUBLICATION**

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KIMBERLY KIRCHMEYER, as Director, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HELIOS PSYCHIATRY INC. et al.,<br><br>    Defendants and Appellants;<br><br>REJI VARGHESE, as Deputy Director, etc.,<br><br>    Real Party in Interest and Respondent. | A165128<br><br>(San Francisco City & County Super. Ct. No. CPF-22-517709) |

**ORDER MODIFYING OPINION AND
CERTIFYING OPINION FOR PUBLICATION
[NO CHANGE IN JUDGMENT]**

**THE COURT\*:**

The nonpublished opinion, filed on February 14, 2023, is ordered modified as follows:

1.    The penultimate sentence of the first full paragraph on page 2 is replaced with the following sentence:

---

\* Tucher, P. J., Fujisaki, J., and Rodríguez, J. participated in the decision.

For example, between January 2019 and September 2020, Dr. Dore prescribed two controlled substances — Adderall and Klonopin — to another patient, a family member (family member).

2.     Footnote 1 on page 2 is modified to read:

Other aspects of the Board's investigation — including its investigation into an allegation that Dr. Dore violated federal regulations by obtaining ketamine prescriptions in her name and using the prescriptions for "office stock" to dispense to patients — are not at issue. In compliance with the trial court's May 2022 sealing order, we omit information that could be used to identify the family member.

3.     The third sentence of the last full paragraph on page 2 is replaced with the following sentence:

It also served her with investigative interrogatories requesting information about the treatment she provided to the family member.

4.     The penultimate sentence of the first full paragraph on page 5 is replaced with the following sentence:

The family member provided a declaration explaining their reason for seeking treatment from Dr. Dore, identifying the medications she prescribed, and describing the treatment she provided.

These modifications effect no change in the judgment.


The opinion in this appeal, filed on February 14, 2023, was not certified for publication in the Official Reports. For good cause appearing, pursuant to California Rules of Court, rule 8.1105(b) and (c), the opinion is certified for publication. Accordingly, respondent's request for publication is GRANTED.


Dated: _____            _____, P. J.

2

Superior Court of San Francisco County, Hon. Suzanne Ramos Bolanos

Rothschild Wishek & Sands, Michael Bradley Wishek and William David Corrick; Long & Levit, William David Corrick, for Appellants.

Law Offices of Daniel H. Willick and Daniel H. Willick for California Medical Association, Psychiatric Physicians Alliance of California, and Northern California Psychiatric Society, as Amici Curiae on behalf of Appellants.

Rob Bonta, Attorney General, Gloria L. Castro, Assistant Attorney General, Mary Cain-Simon and Carolyne Evans, Deputy Attorneys General for Real Party in Interest and Respondent.